UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MONTRELLE FENNIDY and STEPHEN | * | CIVIL ACTION NO: 19-12032 |
| FENNIDY, SR., on behalf of their minor child | * | |
| F. F. and TOYONITA PARQUET    and | * | |
| GREGORY DAVIS on behalf of their | * | JUDGE: |
| minor child, T.D. | * | |
| | * | |
| Plaintiffs | * | MAGISTRATE: |
| | * | |
| VERSUS | * | |
| | * | |
| CHRIST THE KING PARISH SCHOOL, DAWN | * | Request for Trial By Jury |
| SWEAR CASTILLO, and THE ROMAN | * | |
| CATHOLIC CHURCH OF THE ARCHDIOCESE | * | |
| OF NEW ORLEANS | * | |
| | * | |
| Defendants | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **COMPLAINT**

NOW INTO COURT, through undersigned counsel, come Petitioners, Montrelle Fennidy and

Stephen Fennidy, Sr. on behalf of their minor child, F.F., and Toyonita Parquet and Gregory Davis,

on behalf of their minor child T.D. (hereinafter referred to as "Petitioners"), who respectfully allege

as follows:

1.

The following person or entities are named as Defendants herein:

A.    **CHRIST THE KING PARISH SCHOOL** (hereinafter referred to as "Christ the
King") an elementary school located in the Parish of Jefferson, State of Louisiana
which is under the control of the Archdiocese of Orleans;

B.    **DAWN SWEAR CASTILLO** (hereinafter referred to as "Castillo") a person of the
full age of majority, who, upon information and belief, is domiciled in the Parish of
Jefferson, State of Louisiana who at all pertinent times herein was the principal of
Christ the King Parish School;

C.    **THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW
ORLEANS** (hereinafter referred to as "The Archdiocese"), a Louisiana non-profit

corporation domiciled in the Parish of Orleans, State of Louisiana, authorized to do and doing business in the State of Louisiana;

2.

This action is brought pursuant to 42 U.S.C.A. § 1983 to redress the deprivation under color of state statute, ordinance, regulation, custom, or usage, or rights, privileges, and immunities secured by the Constitution and laws of the United States. The rights sought to be protected are secured by the 14th Amendment of the United States Constitution (U.S. Const. Amend. XIV) and by 42 U.S.C.A. §§ 1981 and 2000(d).

3.

Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. § 1343.

4.

In August of 2018, Petitioners' daughters were both sixth (6th) grade students at Christ the King Parish School.

5.

In preparation for the upcoming school year, Mrs. Fennidy took her daughter F.F. to get her hair braided to her scalp in neat cornrows.

6.

Ms. Parquet, whose daughter T.D. suffers from medically diagnosed hair loss, also prepared her child for the upcoming school year by fitting her with hair extensions which fell approximately 3 inches below her shoulders.

7.

On the first day of the school year, Thursday, August 9, 2018, F.F. was sitting in homeroom with the rest of her classmates when her teacher, who was sitting at her desk, called across the classroom and loudly asked F.F. whether her hair was "*real.*"

8.

The teacher then approached the young girl and handed her a reprimand letter that her mother was supposed to sign and return to her teacher the following day. The letter declared that F.F. was not in compliance with Christ the King's new mandate prohibiting her hairstyle.

9.

Shortly thereafter, F.F. was called out of class by the school's guidance counselor, Diana Hetzler. Ms. Hetzler ordered F.F. to bend down so she could examine her hair for extensions.

10.

On Friday, August 10, 2018, Ms. Parquet's daughter, T.D., was approached by an administrative assistant, Ms. Sue Shepard, who commented to the young girl that her hair seemed to have grown significantly since the previous year.

11.

Upon information and belief, Shepard and another school administrator, Linda Vincent, went through the 2016-2017 yearbook in order to compare T.D.'s class photo from the previous year with her hair from the current year and deduced that she was wearing hair extensions.

12.

Shepard later observed T.D. and asked if she had "that stuff" in her hair. T.D. politely confirmed she was wearing hair extensions.

13.

Subsequently, T.D. was approached by her teacher, Ms. McCann who scolded the young girl and instructed her she had to take "that stuff" out of her hair and have her mother sign the same reprimand letter that F.F. received the previous day.

14.

On Monday, August 13, 2018, Mrs. Fennidy contacted the school's principal, Dawn Castillo, asking that her daughter be allowed to maintain her braids.  Mrs. Fennidy explained to Castillo that the braided extensions were necessary in order to preserve her daughter's hair overextending periods of time.  Castillo informed Mrs. Fennidy that the extensions were not permissible because "*Styles which draw undue attention to the student and cause distractions in class are not allowed.*"

15.

F.F. has worn braids since she started attending Christ the King.  She is an exceptional student and has never been disciplined for causing a distraction.  Nevertheless, Mrs. Fennidy offered to shorten her daughter's hairstyle in order to appease Christ the King.

16.

Both Mrs. Fennidy and Castillo agreed that F.F. would have her hair re-styled such that it did not extend beyond her shoulders before Monday of the following school week.

17.

On August 16, 2018, Ms. Parquet also attempted to reach a compromise with Castillo on behalf of her daughter T.D.  At that time, she explained her daughter's medical condition and requested that she be allowed to maintain her extensions if she wore them in a neat bun.

18.

Castillo repeated the same excuse regarding hairstyles which "*cause distractions.*"  She then told Ms. Parquet to provide the school with a physician's note and to cut T.D.'s extensions to the nape of her neck.  Castillo then sent an email to Ms. Parquet declaring that she would be monitoring the child's hair growth periodically.

19.

F.F. subsequently returned to school with her hair braided into a ponytail that did not extend beyond her shoulders.  Ms. Fennidy spent considerable time and money altering her daughter's hair into a style that would be acceptable to Christ the King and in line with the compromise made with Principal Castillo.

20.

However, despite the agreement Castillo and Mrs. Fennidy reached the previous Monday, F.F. was again removed from her classroom for having extensions in her hair.  Additionally, Castillo ordered Mrs. Fennidy to retrieve F.F. from school.

21.

When Ms. Fennidy arrived at the school, she again attempted to explain the complexities of African American hair in hopes that Castillo would understand the discriminatory nature of the policy.

22.

Castillo then responded that the young girl's braids were distracting because girls have the tendency to "*twirl*" and "*flip*" their extensions.

23.

When Mrs. Fennidy highlighted the fact that young girls flip their hair when it is long whether or not the hair is "*natural*", Castillo avoided responding to her inquiry by declaring "*It's just something we want.  We don't want them wearing fake hair.*"

24.

Castillo ended the conversation saying, "*She (F.F.) can't come back to school.*"

25.

Subsequently, Mrs. Fennidy was informed that her tuition bill for the month of September

would be cancelled and F.F. has not been allowed to return to school.

26.

After seeing the way F.F. was treated and fearing that her daughter would be forced to endure further retaliation, T.D.'s mother was constructively forced to remove her daughter from Christ the King shortly thereafter.

27.

The Archdiocese and Christ the King are joint and solidary obligors who are liable for the actions of their employees, including Castillo.

28.

Christ the King's policy regarding "*natural*" hairstyles were discriminatory in that the policy had a disparate impact on the African American female population of students at Christ the King.  On information and belief, only the African American girls who attended Christ the King were inspected, investigated, reprimanded, and subsequently punished for wearing extensions in violation of the Equal Protection Clause of the U.S. Constitution, Title VI of the Civil Rights Act of 1964, and their due process rights afforded under the Laws of Louisiana.

29.

Moreover, the school's discriminatory policy interfered with Petitioners' liberty to direct the upbringing and education of their children and impaired Petitioners' contractual rights under 42 U.S.C § 1981.  Specifically, that their contractual agreement with Christ the King School was unilaterally vitiated based on this discriminatory policy.

30.

Upon information and belief, Defendants intentionally denied Petitioners the same rights Defendants afforded to other non-African American persons to make and enforce such contracts,

by engaging in racially discriminatory conduct against Plaintiffs in violation of §1981 including but not limited to the personal physical inspection of African-American students for hair extensions and the repeated public humiliation of only African-American students suspected of having same.

31.

Defendants, by and through their employees or agents, engaged in the shocking, extreme and outrageous conduct alleged herein intentionally and maliciously for the purpose of causing Petitioners' minor children to suffer humiliation, mental anguish, apprehension, and severe emotional distress.

32.

As a direct, proximate, and legal result of the conduct of Defendants' negligence, failure to meet the applicable standards of care, and in breach of their various duties to Petitioners, Petitioners have suffered and continue to suffer injury, mental anguish, severe emotional distress, harm, and damages, and therefore are entitled to recover any and all damages, including punitive damages where applicable, from Defendants, according to proof at trial.

33.

Petitioners assert their rights under the Seventh Amendment to the U.S. Constitution and demand, in accordance with the Federal Rule of Civil Procedure 38, a trial by jury on all issues.

WHEREFORE, Petitioners, Montrelle Fennidy and Stephen Fennidy, Sr. on behalf of their minor child, F.F. and Toyonita Parquet and Gregory Davis, on behalf of their minor child T.D. Petitioners herein, respectfully pray that this Court assume jurisdiction over this case, that a copy of the Complaint be served upon all Defendants, that Defendants be cited to appear and answer

same, and that after due proceedings are had, there be judgment in favor of the Plaintiffs awarding

damages, prospective relief, punitive damages, costs and attorney's fees with interest, as are proper

in the premises, along with any other just and equitable relief under state and federal law.

Respectfully submitted,

**CHEHARDY, SHERMAN, WILLIAMS,**
**MURRAY, RECILE, STAKELUM,**
**& HAYES, LLP**

___*/s/ James M. Williams* _____
JAMES M. WILLIAMS (BRN 26141)
INEMESIT U. O'BOYLE (BRN 30007)
ERIN B. RIGSBY (BRN 37374)
One Galleria Boulevard, Suite 1100
Metairie, Louisiana 70001
Telephone: (504) 833-5600
Facsimile: (504) 833-8080
*Attorneys for Petitioners*

**PLEASE SERVE:**

**CHRIST THE KING PARISH SCHOOL**
Through its principal place of business:
2106 Deerfield Rd.
Terrytown, LA 70056

**CHRIST THE KING PARISH SCHOOL**
Through its registered agent for service of process:
Jeffrey J. Entwisle
7887 Walmsley Avenue
New Orleans, LA 70125

**DAWN SWEAR CASTILLO**
Through her place of employment:
Christ the King Parish School
2106 Deerfield Rd.
Terrytown, LA 70056

**THE ROMAN CATHOLIC CHURCH**
**OF THE ARCHDIOCESE OF NEW ORLEANS**
Through its registered agent for service of process:
Jeffrey J. Entwisle
7887 Walmsley Avenue
New Orleans, LA 70125